**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TODD HOLMES**                                                           **CIVIL ACTION**

**VERSUS**                                                                **NO. 13-444-SS**

**ST. TAMMANY PARISH**
**SHERIFF'S OFFICE, ET AL.**

## ORDER AND REASONS

Inmate Todd Holmes filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against the St.

Tammany Parish Sheriff's Office and Sheriff Rodney J. Strain, Jr.  In the complaint, plaintiff

challenged various conditions of his confinement within the St. Tammany Parish Jail.  Specifically,

he claimed:

1.     For a one-week period in January of 2013, thirty-one inmates were confined in an

       overcrowded cell "with one toilet, one roll of toilet paper, and no cold running water,

       other than the toilet."

2.     Those inmates were forced to sleep without bedding on a dirty concrete floor and

       were not afforded a change of clothes, showers, soap, toothpaste, toothbrush, cold

       running water, or, at times, toilet paper.

3.      Booking into the St. Tammany Parish Jail took approximately seventy-two hours, and inmates were not taken for a "seventy-two hour hearing" until four to eight days after arrest.

4.      Inmates were charged $45 for a drug test and told "if you don't take this drug test you may not be allowed to bond out of jail."

5.      Inmates were charged $15 for each criminal charge against them.

6.      Inmates were not afforded access to a law library, copy machine, typewriter, or a computer.

7.      The jail food was inadequate.

8.      Inmates were not allowed outside recreation.

9.      For court appearances, inmates were kept shackled and handcuffed for eight to ten hours.

The defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  Plaintiff opposed that motion.[2]  The parties consented to the jurisdiction of the undersigned United States Magistrate Judge.[3]

## I.  Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary

---

[1]      Rec. Doc. 26.

[2]      Rec. Doc. 29.

[3]      Rec. Doc. 30.

judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex Corp., 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear

the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.  "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

## II.  St. Tammany Parish Sheriff's Office

As a preliminary matter, the Court notes that the defendants argue that the St. Tammany Parish Sheriff's Office is not a proper defendant.  That is clearly correct.  In Louisiana, "a sheriff's office is not a legal entity capable of being sued...." <u>Cozzo v. Tangipahoa Parish Council-President Government</u>, 279 F.3d 273, 283 (5th Cir. 2002); <u>see also Campbell v. St. Tammany Parish Sheriff's Office</u>, Civ. Action No. 09-3143, 2009 WL 1107251, at *1 (E.D. La. Apr. 23, 2009); <u>Wetzel v. St. Tammany Parish Jail</u>, 610 F. Supp. 2d 545, 548 (E.D. La. 2009); <u>Smith v. St. Tammany Parish Sheriff's Office</u>, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008); <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D. La. 1988).  Therefore, the claims against that defendant must be dismissed with prejudice.

## III.  Sheriff Strain

As to the claims against the remaining defendant, Sheriff Strain, the defendants argue that those claims must be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing suit.  The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).[4]

Federal courts have taken a strict approach to the exhaustion requirement.  For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," Porter v. Nussle, 534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," id. at 532.  The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  The United States Fifth Circuit Court of Appeals therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth." Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

The Fifth Circuit also recently emphatically held that the mandatory exhaustion requirement cannot be excused by a federal court.  The Fifth Circuit stated:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory.  We thus hold that Underwood has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. *District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.*  It is irrelevant whether exhaustion is achieved during the federal proceeding.  *Pre-filing exhaustion is*

---

[4]    "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

> *mandatory, and the case must be dismissed if available administrative remedies were*
> *not exhausted.*

<u>Gonzalez v. Seal</u>, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added; footnote omitted).

In support of their motion, the defendants have submitted the affidavit of Warden Gregory

Longino, in which he outlined the Administrative Remedy Procedure put in place by the St.

Tammany Parish Sheriff's Office ("STPSO"):

3.  In 1996, the STPSO adopted an Administrative Remedy Procedure ("ARP") that permits inmates to lodge grievance complaints. The procedure allows any inmate – whether they are being held by federal or state agencies after conviction or are pre-trial detainees – to request in writing a review of a complaint the inmate has about a policy, condition or incident that occurs within the jail.

4.  The Jail's ARP was in place and functioning in January 2013, when the incident giving rise to this lawsuit occurred.

5.  A summary of the ARP is contained in the Inmate Handbook that is given to every inmate who is booked into the Jail. A photocopy of that summary, as it appears in the handbook, is attached to and incorporated into this Affidavit.

6.  A copy of the complete ARP can also be found in the Jail law library, where access is available to all inmates and was available to all inmates in January 2013.

7.  The ARP, including the inmate complaint procedure, was posted in every housing unit of the jail in January 2013. Blank ARP forms were available in every housing unit and made easily accessible to all inmates.

8.  An inmate can also ask any Jail deputy for a copy of the blank forms.

9.  In lieu of the blank forms, inmates may submit a written communication containing the words, "This is a grievance through the ARP" or something to that same effect.

10. Under the procedure, a grievance must be filed within 90 days from the date of the incident giving rise to the grievance. Any grievance filed more than 90 days after the incident is rejected as untimely.

11.     The written grievance first is forwarded to the First Level Respondent, who must respond within 15 days of receipt of the grievance.  This process is designated as the First Step Review.

12.     If an inmate is not satisfied with the results of the First Step Review, the inmate may appeal the response to Affiant, in his role as Warden, within five days of the inmate's receipt of the First Step Review results.  The Warden has 25 working days to reply to the appeal.  This step is designated Second Step Review.

13.     If an inmate is not satisfied with the results of the Second Step Review, the inmate may appeal that result to the Sheriff within five days of the inmate's receipt of the Warden's response.  The Sheriff has 40 days to reply to this appeal, which is designated Third Step Review.

14.     If an inmate does not receive a timely response to either of the first two steps of the process, the inmate nevertheless is required to follow through to the next step of the process.

15.     Inmate Todd Holmes, the plaintiff in this lawsuit, failed even to initiate the ARP regarding the alleged incident giving rise to this lawsuit in that he never even filed an initial grievance.

16.     In fact, the only item in inmate Holmes' administrative file that is in any manner even tangentially related to the allegations in this lawsuit is an Inmate Complaint Form dated January 24, 2013 regarding the plaintiff's desire 'to be placed on the court docket.'

17.     Since the complaint in question was more in the nature of a request than a grievance and since it involved a matter over which the Jail had no control, i.e., the timing of court appearances, no further action was taken.

18.     As a result, inmate Holmes did not exhaust his administrative remedies as required by the Jail ARP concerning his claims that are the subject of this lawsuit prior to filing the lawsuit.[5]

---

[5]     Rec. Doc. 26-3.

Although there is some question as to whether First Step Grievances were filed with respect to the various claims in this lawsuit, even plaintiff does not dispute that no grievances were pursued past the first step.  On the contrary, in his opposition, he states:  "The Administrative Remedy Process was not exhausted for the simple fact that none of the grievances we filed were ever returned to us."[6]  However, even if that is true, it is of no moment.  An inmate who fails to receive a timely response to his First Step Grievance is to proceed to Step Two of the ARP, as noted by Longino in his affidavit and as expressly stated on the ARP form itself.[7]

Because it is undisputed that plaintiff did not pursue any of his instant claims past the first step of the ARP, he clearly did not exhaust his administrative remedies.  As the United States Fifth Circuit Court of Appeals has noted:  "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'" Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (quoting Webster's New Int'l Dictionary 796 (3rd ed. 1981)).  As a result, administrative remedies are not exhausted unless a prisoner pursued his grievance through the *conclusion* of a multi-step administrative remedy

---

[6]   Rec. Doc. 29, p. 3.

[7]   Rec. Doc. 26-3, p. 8, and Rec. Doc. 26-4, p. 46 ("If you do not hear from the 'First Respondent' within 20 days you may file a Request for a Warden's Review within the following 5 days.").  It is irrelevant that the language on the form is phrased in discretionary rather than mandatory terms.  Even if plaintiff was under the impression that seeking further review was *optional* and that inmates were not *required* to request such review if their grievances went unanswered, that would not excuse the federal exhaustion requirement which mandates exhaustion of *all* "available" administrative remedies.  See Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 3010038, at *3 n.11 (E.D. La. Aug. 1, 2008); Voyles v. Strain, Civ. Action No. 07-3090, 2008 WL 152111, at *4 n.12 (E.D. La. Jan. 14, 2008); Negron v. Perkins, Civ. Action No. 07-449, 2007 WL 3171542, at *2 n.6 (E.D. La. Oct. 25, 2007); Valentine v. Newton, No. 9:00-CV-1369, 2002 WL 31309181, at *3 (N.D.N.Y. Aug. 15, 2002) (Sharpe, M.J.) (adopted by Kahn, J., on Sept. 11, 2002).

procedure. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); see also Hemphill v. Inglese, 359 Fed. App'x 537, 540 (5th Cir. 2010) ("[C]omplying with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps.").

This Court is aware that prisoners who submit administrative grievances at times have their efforts frustrated by unhelpful and unresponsive prison officials, although the Court expresses no opinion as to whether such a situation was present in this matter. Nevertheless, the fact remains that Congress has provided that exhaustion of such remedies is required. If the federal courts were to allow inmates to circumvent available administrative procedures by proceeding directly to federal court, the goals and benefits of the exhaustion requirement would be undermined. As the United States Supreme Court noted:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (citations omitted).

Because plaintiff failed to pursue his administrative remedies to their conclusion as required by federal law, thereby giving the defendants a fair opportunity to consider and possibly resolve his

claims without litigation, it is not appropriate for this Court to consider those claims.[8]  Therefore,

the claims against Sheriff Strain must be dismissed.[9]

Accordingly, for all of the foregoing reasons,

**IT IS ORDERED** that the defendants' motion for summary judgment, Rec. Doc. 26, is

**GRANTED** and that plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this seventh day of October, 2013.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[8]   Because plaintiff failed to exhaust his administrative remedies, the remaining arguments raised by the defendants need not be addressed.

[9]   A dismissal for failure to exhaust is generally without prejudice; however, because any new grievance filed by plaintiff would be time-barred under the STPSO administrative remedy procedure and his failure to exhaust therefore cannot be cured, dismissal with prejudice is appropriate in this case.  See Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995) (dismissal with prejudice warranted when administrative relief is time-barred or otherwise precluded); Myrick v. Strain, Civ. Action No. 12-2962, 2013 WL 5232422, at *6 n.14 (E.D. La. Sept. 13, 2013).